# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. A-18-CR-273 RP |
| | § | |
| LUCIO VAZQUEZ | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Stay (Dkt. No. 18); the Government's Response (Dkt. No. 22); and Defendant's Reply (Dkt. No. 23). The undersigned magistrate judge submits this Report and Recommendation pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules. The Court held a hearing on this matter on July 16, 2018.

## I. GENERAL BACKGROUND

Defendant Lucio Vazquez is a Mexican citizen who allegedly entered the country illegally when he was a child. He was removed from the country on March 20, 2012, but later reentered the United States. Vazquez was found in the United States by Department of Homeland Security's Immigration and Customs Enforcement (ICE) officers on May 7, 2018, in the Travis County Jail as a result of his arrest for driving while intoxicated. ICE lodged a detainer with Travis County, and upon completion of the state court proceedings, presented Vazquez to the Department of Justice for possible prosecution for illegal reentry. The United States Attorney's Office accepted the case, and a complaint charging Vazquez with illegal reentry under 8 U.S.C. § 1326 was filed with the Court on June 18, 2018. The Government filed its motion to detain Vazquez the same day.

The Court held a hearing on the motion to detain on July 2, 2018, and ordered Vazquez released on conditions, consistent with the requirements of the Bail Reform Act (18 U.S.C. § 3142). Dkt. No. 15. The Government appealed this decision to Judge Pitman, who upheld this Court's Order. Dkt. No. 17. However, after Vazquez was ordered released, ICE took custody of him, contending that under 8 U.S.C. § 1231, it was required to detain Vazquez pending his removal. Counsel for Vazquez filed a motion to stay his removal, arguing that the Government chose to prosecute Vazquez, and therefore, the criminal prosecution should take precedence over his deportation. The Court ordered that the status quo be maintained to allow the Court to determine its jurisdiction over these issues. A hearing was held on July 5, 2018. The government was unable to state a position on the issues raised by Vazquez's motion at the hearing. The Court therefore continued its order preserving the status quo, and directed the parties to file briefs on the issues, and to appear for a hearing on July 16, 2018. The Court specifically directed that the government be prepared to state a position on the issues Vazquez had raised in his motion. At the hearing, and in the briefing, Vazquez requests that the Court order ICE to release him, consistent with the conditions set by the Court, and further requests that the Court order that ICE not remove him until the criminal prosecution is complete. After the hearing, the Court took the matter under advisement, and now issues the following Report and Recommendation.[1]

## II. ANALYSIS

Vazquez asserts that: (1) the Court's order releasing him on bond takes precedence over the immigration detention; (2) the Court may order that Vazquez remain in the United States while his

---

[1] When these issues were raised, the case was pending as a complaint, and thus had not been assigned to a district judge. The day after the Court's hearing, however, a grand jury returned an indictment against Vazquez, which was assigned to Judge Piman. Dkt. No. 26.

2

criminal case remains pending; and (3) the Court should order ICE to show cause why it should not be held in contempt for violating this Court's order that Vazquez be released on bond. The Government opposes each of these positions, and contends ICE is within its rights to hold Vazquez pending removal, and—at least so long as Vazquez has not been removed—the government is not required to dismiss its criminal prosecution.

The instant issue falls within a line of cases which have, in the last few years, addressed the interplay between the Bail Reform Act—which governs pretrial detention of those charged with federal crimes—and the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*—which governs the removal of those present in the United States without permission. Under the BRA, there is a presumption that a defendant will be released at his initial appearance. When, as here, the defendant is not a citizen or permanent resident of the United States, the Court is required to delay the detention hearing for up to 10 days, and to direct the attorney for the government to inform "the appropriate official of the Immigration and Naturalization Service." 18 U.S.C. § 3142(d)(2). "If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, *notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings*." *Id.* (emphasis added). The INA, on the other hand, requires that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," but that during this removal period, the alien shall be detained. 8 U.S.C. § 1231(a).

The Government contends that, when Vazquez was released from custody on the conditions of release set by the Court, he was subject to being detained by ICE. It notes that the prior order of removal that led to Vazquez's deportation in 2012 was administratively reinstated at the time he was

3

first taken into custody by ICE from Travis County. Because there is a pending, active order of removal, the government contends that ICE was obligated by the INA to take Vazquez into custody. Vazquez, on the other hand, argues that the Court's order on detention takes precedence over the ICE detainer, and that he should therefore be released from ICE's custody, and his removal deferred until after the criminal prosecution.

This issue is nearly identical to the one presented in two Eastern District of New York cases, *United States v. Ventura*, 2017 WL 5129012 (E.D.N.Y. Nov. 3, 2017) and *United States v. Boutin*, 269 F. Supp. 3d 24 (E.D.N.Y. 2017). As in this case, the defendants there had been released from federal custody pursuant to the BRA, and upon release were taken into ICE custody pending their removal. *Id.* The court in those cases found that the Government could not use an immigration detainer to keep a criminal defendant in custody prior to trial, as "the Bail Reform Act provides the exclusive means by which the Government may detain a removable alien pending trial in a criminal case." *Ventura*, 2017 WL 5129012 at *2 (quoting *United States v. Galitsa*, No. 17-CR-324, Dkt. No. 30, at 7 (S.D.N.Y. July 28, 2017)); *see also United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Ore. 2012) ("When the Executive Branch decides that it will defer removal and deportation in favor of first proceeding with federal criminal prosecution, then all applicable laws governing such prosecutions must be followed, including the BRA."). The court pointed out that:

> The Government cannot and should not have it both ways. The United States Attorney's Office and ICE/DHS are part of one executive branch. As such, the Executive Branch should decide where its priorities lie: either with a prosecution in federal district court or with removal of the deportable alien. Courts "addressing the possibility of deportation during a criminal proceeding have explained that the Executive Branch has two choices when an alien unlawfully present in the United States after prior removal is facing criminal prosecution: The DHS may proceed administratively with deportation, or defer removal for the alien to face criminal prosecution."

4

*Ventura*, 2017 WL 5129012, at *2 (quoting *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1136 (M.D. Fla. 2015)). These cases explain in some detail the inherent inconsistency of ICE on the one hand presenting a defendant for criminal prosecution, and then, on the other hand, just weeks later, and well before the criminal proceedings have concluded, taking the defendant into its own custody to deport him. Because these decisions have covered this ground well, the Court will not repeat here the analysis underlying those courts' conclusions. The only thing the undersigned would add to those decisions is that there is really no need to "reconcile" the BRA and the INA, as the BRA already does so. It states that in the 10 days following the initial appearance of an alien on federal criminal charges, ICE may take the alien into custody and pursue his removal. 18 U.S.C. § 3142(d)(2). But if it chooses not to do so, the statute mandates that such person "shall be treated in accordance with [the BRA], "notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." With this language, Congress has already reconciled the two statutes. If ICE does not take the alien into custody during the 10 day period set by statute, then Congress directs that the defendant must be treated in accordance with the Bail Reform Act, notwithstanding the fact that "other provisions of law governing . . . deportation or exclusion proceedings" might provide otherwise.

    Here, the Government chose to proceed with prosecution of Vazquez over his removal. It made no effort to take Vazquez into custody during the 10 day period mandated by the BRA. Unhappy with the Court's order setting conditions of release, and the district judge's order approving that, it decided to try to use 8 U.S.C § 1231 to require that Vazquez remain in custody pending trial, in direct conflict with the order of release. The government cannot "have it both ways," and proceed with the prosecution of Vazquez under § 1326 and his removal from the United States

simultaneously.[2] In fact, the government has not presented a single case arguing otherwise. Instead, its brief focused solely on whether this Court has jurisdiction to enjoin the Attorney General from executing the removal order. But the Court has no intention of doing so. Because the government has apparently changed its mind, and decided that it does in fact wish to pursue Vazquez's removal from the United States *before* the completion of the criminal proceedings it initiated, the criminal case must be dismissed, for all of the reasons explained in *Ventura* and *Boutin* and the cases cited therein.[3]

---

[2] *See Ventura*, 2017 WL 5129012, at *3 (ordering the Government to either dismiss the indictment with prejudice or release the defendant from ICE custody); *Boutin*, 269 F. Supp. 3d at 29 (same); *Trujillo-Alvarez*, 900 F. Supp. 2d at 1180–81 (holding that if the defendant were not returned to the district, the court would dismiss the pending criminal charge with prejudice); *cf. United States v. Blas*, 2013 WL 5317228, at *7 S.D. Ala. Sept. 20, 2013 (ordering the Government to release the defendant from custody); *United States v. Castro-Inzunza*, 2012 WL 6622075, at *1 (9th Cir. July 23, 2012 (per curiam) (finding that the government "failed to meet its burden to show that the district court may not assure defendant's appearance at trial by, for example . . . enjoining the government from interfering with his ability to appear at trial" and that "it lacks the ability to stay or defer defendant's removal through a stay or departure control order").

[3] As explained in the text, it is arguable that once the government chooses not to take the defendant into custody during the 10 day waiting period set by the BRA, it cannot change course. Because that would lead to difficult jurisdictional and separation of powers questions, the Court believes the better approach is to avoid these issues by requiring that the criminal prosecution be terminated should the government choose to detain the defendant even after he is ordered released by a court. The government conceded at the hearing that if it does deport a defendant before the case is complete, the case should be dismissed. The undersigned believes that the conditions warranting dismissal should not be quite so limited—if ICE takes the defendant into custody after he is released under the BRA, dismissal is warranted at that time. This is the case for a number of reasons, not the least of which is that the Court cannot ensure the defendant's presence in court if he is in ICE custody. This prosecution is a case in point. Notwithstanding a direct order that DOJ and DHS ensure that Vazquez be present for all proceedings in this case, and notwithstanding receipt of reminder emails from the US Marshal Service, ICE did not bring him to court for the arraignment set yesterday. The AUSA had no explanation for his non-appearance, and, when called by phone, the ICE Deportation Officer had "no comment" about the matter. To say the least, this is a very cavalier attitude regarding the violation of a federal court order.

## III. RECOMMENDATION

In accordance with the foregoing, the Court **RECOMMENDS** that the District Judge **ORDER** that within seven days of the adoption of this recommendation the government release Vazquez from custody subject to the conditions set forth in this Court's prior order; and **FURTHER RECOMMENDS** that if the Government does not release Vazquez by this time, the District Court **DISMISS** the indictment. As the parties have not briefed the issue on whether this dismissal should be with or without prejudice, they should do so in their objections to this Report and Recommendation.

## IV. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 27th day of July, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE